CUMBERLAND, 1858. 69

Portland and Oxford Central R. R. Co. *v.* Grand Trunk Railway Co.

———◆———

PORTLAND & OXFORD CENTRAL R. R. Co., *Petr's, versus* THE GRAND TRUNK RAILWAY CO. AND ATLANTIC & SAINT LAWRENCE RAILROAD COMPANY.

In a proceeding under the statute of 1854, c. 93, relating to connecting railroads, the actual possession of the railroad by the petitioners, under claim of title, with no evidence of adverse claim, is sufficient evidence of their title and of the organization of the company, to entitle them to the relief which the statute was designed to afford.

Such a proceeding is not analogous to a suit at common law; and, where a railroad company had leased its road to another company, the lessors and lessees may be joined as respondents; and, if the petitioners are entitled to relief against either, commissioners may be appointed, and the Court will afterwards determine against which the award should be finally made; or, whether against both.

The sale of the Buckfield Branch Railroad to the Cumberland & Oxford Central Railroad Co., which was authorized by a special statute of 1857, invested the latter company with all the rights and immunities of the former, including the right of connection with the Atlantic and Saint Lawrence railroad. And the right to *connect* is not lost to the company purchasing, in consequence of its being empowered by its charter to make a road *across* the A. & S. road. But when the road shall be actually made across and operated, the right of connection will no longer exist.

A statute authorizing the Court, by commissioners appointed therefor, to determine judicially what are the mutual rights and obligations of any two railroad companies, authorized by their charters to connect their roads, is clearly within the just limits of legislative power. And as the statute of 1854 was not intended to go beyond this, it is remedial only, and binding upon existing corporations.

EXCEPTIONS from the ruling of DAVIS, J.

The Portland and Oxford Central Railroad Company in their PETITION represent, that said corporation is the grantee of the Buckfield Branch Railroad, with all the privileges pertaining to said road under its charter, and that the said Buckfield Branch road has become a portion of said Portland and Oxford Central Railroad, and connects with the Atlantic and St. Lawrence Railroad, (whereof the Grand Trunk Railway of Canada has become the lessee,) in the town of Minot. That said companies have failed to agree upon terms of connection, or the rates, at which passengers or merchandize, coming from the one, shall be transported over the other, and that the place of connection, prescribed by said lessees of the Atlantic and St. Lawrence road, is distant from the place of actual junction of the two roads, and inconvenient and burdensome to the petitioners.

They pray for the appointment of commissioners to determine and award upon the matters of disagreement, &c.

This petition, (which is based on the statute of 1854, c. 93,) was returnable at October Term, 1857, when the Grand Trunk Railway appeared and filed an answer. Whereupon the petitioners moved for leave to amend, by making the Atlantic and St. Lawrence Railroad Company a party respondent, which motion was allowed; and, on a subsequent day of the term, the last named company filed its answer.

The case was heard at the same term. The nature of the respondent's answers, and of the evidence produced by the parties, may be gathered from the bill of exceptions 'and the opinion of the Court.

Upon the point of organization of the Portland and Oxford Central Railroad Company, the petitioners adduced in evidence the charter of the company; also charter of the Buckfield Branch Railroad Company; book of records of organization and proceedings of company and of directors, which book was admitted, though objected to, on proof that it was the book of records of the corporation, and of the president and directors. Also, notices in two public newspapers.

Upon the point of conveyance or transfer of the Buckfield Branch Railroad to the petitioners, they exhibit in evidence, records of Portland & Oxford Central Railroad, doings of corporation and of directors; deed from Smith to said corporation dated, August 10th, 1857; also deed from Parris to Smith, Oct. 29th, 1849.

Smith testified, that he was in possession of Buckfield Branch Railroad, under his deed from Parris, and that he transferred possession of said road, with all its property and franchises to the Portland & Oxford Central Railroad Co., on the delivery of his deed to them.

The respondents objected to the legal sufficiency of the evidence offered on these two points.

The presiding Judge ruled, that the organization of the petitioners was sufficiently made out for the purposes of this case, by the evidence adduced.

He also ruled that a sufficient legal conveyance was shown, for the purposes of the present proceeding, to sustain the allegation of the petition, that the petitioners were grantees of the Buckfield Branch Railroad line, with its privileges, &c.; that the conveyance, having been made by Smith, the mortgagee, and he being shown to have been in possession as such, that possession and conveyance were sufficient for the present proceedings, as against parties not claiming any title.

He also ruled that the institution of this proceeding was a sufficient evidence of failure to agree upon terms of connection, as alleged in the petition, taken in connection with other evidence in the case, [contained in sundry letters and telegraphic communications.]

He further ruled that, by the terms of the Act of March 29, 1853, relied upon by the Atlantic and St. Lawrence Railroad Company, in its answer, this proceeding could be sustained against them as lessors; that the lessees are to be regarded as the servants of the lessors, and that terms of connection could be legally enforced against the lessees only through the means of process against the lessors.

He further ruled that the Atlantic company is subject, notwithstanding the provisions of its charter, to the provisions of the Act of 1854, c. 93, though not liable to have terms imposed inconsistent with said provisions of its charter.

And upon the point taken in the answer of the Atlantic company, that the Portland and Oxford Central Railroad, whenever built according to its charter, would be an independent crossing road, and not a connecting road with the Atlantic line, and therefore, not entitled now, or at any time, to maintain any such petition for terms of connection with the latter, the presiding Judge ruled and held that if the Portland and Oxford Central Railroad Co., should build and use conjunctively with the road on the east side of the Atlantic and St. Lawrence Railroad any portion of its line, on the west side of the Atlantic road, it would then cease to be entitled to any connection with the Atlantic line; but that until any part of it should be built on the west side of the Atlantic line, it is entitled, by its possession of the immunities of the Buckfield Branch Road Co., to a connection with the Atlantic Road, on its east side.

The respondents contended, that if a legal conveyance and transfer of the Buckfield Branch line to the petitioners were made out, such a conveyance, extinguished all the immunities pertaining to the Buckfield Branch line, and vacated the charter of that company, and that the Portland and Oxford Central Railroad Company, having no right of connection by any terms of its own charter, could not maintain this process against either of the respondents. But the presiding Judge held and ruled that the conveyance in question, did not extinguish the alleged immunity of the Buckfield Branch line but conveyed it unimpaired to the petitioners.

The presiding Judge, upon the whole case, ordered an entry to be made upon the docket:—"Prayer of the petitioners granted. Commissioners to be appointed."

To which order, and to the several rulings of the presiding Judge, the respondent corporations excepted.

The questions presented by the bill of exceptions were elaborately argued by

*F. O. J. Smith*, for the petitioners, and by

*Barnes*, for the respondents.

The opinion of the Court was delivered by

DAVIS, J.—This is a proceeding under the statute of 1854, c. 93, relating to connecting railroads. The petitioners allege that they own a railroad in operation between Buckfield and Minot, there connecting with the railroad of the respondents, and that said companies have failed to agree upon terms of connection; wherefore they pray that commissioners may be appointed by this Court to determine and award upon the matters of disagreement. The parties were heard at *Nisi Prius*, and commissioners were ordered to be appointed. In arriving at that result, there were several rulings to which exceptions were taken, which we will notice in their order.

The first objection is, that the organization of the petitioners, and their title to the railroad in their possession, are not sufficiently proved. These are mainly questions of fact; and a part only of the evidence is reported. The first meeting of the corporators appears to have been regularly called, at which the charter was accepted, and the company organized. And they subsequently went into actual possession of the Buckfield Branch Railroad, under a deed from F. O. J. Smith, a mortgagee then in actual possession; and the company have ever since operated the road as their own. What other evidence of title there was does not appear; but the respondents claim no title, and the case does not show any error in the ruling that the organization and the title of the petitioners were sufficient. Actual possession under claim of title, with no evidence of any adverse claim, would seem to be all that should be required to entitle a company to the relief which the statute was designed to afford.

The ruling, that the parties had failed to agree upon terms of connection, was a matter of fact exclusively; and if sub-

ject to revision, we think it was warranted by the evidence in the case.

Both of the companies that have been notified have appeared and answered to the petition. They have both an interest in the railroad, one having a leasehold estate, and the other the reversion. This proceeding is not analogous to a suit at common law; but it may be sustained if either of the companies is liable. The lessees have actual possession of the railroad; and, as they have property within this State, and agents who reside here, there are many reasons why they should be held responsible. And the statute authorizing the lease provides that the liabilities of the lessors shall remain the same as before. But it is not necessary for us to determine, at this stage of the proceedings, against which of the companies, if either, an award shall finally be made; or whether against both. In either case, it was proper for commissioners to be appointed.

The petitioners are authorized by section ten of their charter, "to purchase the franchise and all the property of the Buckfield Branch Railroad, with all the privileges, rights of way, and other immunities whatsoever pertaining to said road." *Special Laws of* 1857, *c.* 122. And it is further provided in the same section, that, from and after such purchase, "the Buckfield Branch Railroad shall merge in and become a part of the Portland and Oxford Central Railroad; and the charter hereby granted shall, in such case, be and operate in all the powers, rights and privileges herein described, co-extensively with the line of road herein first described and the line heretofore embraced by the Act incorporating the Buckfield Branch Railroad Company; and the last named company shall thereupon cease."

The privileges, rights and immunities of the Buckfield Branch Railroad Company having passed by the sale, so authorized, to the petitioners, their rights are co-extensive with those granted by the charters of both companies. And though the former company has ceased to exist, except for certain specified purposes, yet their charter must still be

resorted to, to ascertain and determine the rights of their vendees. These rights, including that of connection with the Atlantic & St. Lawrence Railroad, were not extinguished by the transfer, but they passed unimpaired to the purchasers.

It is argued, however, that if the petitioners did acquire all the rights and immunities of the Buckfield Branch Railroad Company, still the right of connection with the A. & St. L. Railroad must have been lost, because the petitioners are empowered by their charter to make a road *across* the latter road. And, it is said, that a "crossing" road cannot be a "connecting" road. Upon this point the presiding Judge ruled, that if the railroad of the petitioners should be hereafter *actually made across* the railroad of the respondents, and be in operation on both sides of it, it would then be no longer a connecting railroad; that the right of *connection* would *then* be lost— but not until then.

Railroad corporations, whose roads cross each other, have no mutual rights, and are under no mutual obligations, except such as are granted or imposed by the general laws, or by their respective charters. Nor can the Legislature add or impose any thing, unless the power to do so was reserved when the charter was granted.

It is true the Legislature may, by general laws, applicable to all railroad corporations alike, restrict the rate of speed in traveling, or require trains to be stopped before crossing bridges, or other railroads. This is remedial legislation, designed for the public safety, of the same nature as that legislation which imposes certain restrictions upon persons traveling in streets, or other public ways. And, for all violations of such laws, railroad corporations may be held to answer before the judicial tribunals. But the petitioners, in the case before us, ask the interposition of the Court, not for any public right or security, but for certain private and special rights which they claim against the respondents. Did the Legislature confer any such rights as are claimed? If they did grant such rights to the petitioners, did they reserve the right to do it in the charter of the respondents?

It has always been the practice in this State for the Legislature, in granting charters for railroad corporations, to reserve the right to authorize other companies to connect their railroads with those of such corporations, upon one side, or both. And the mutual rights and obligations resulting from such "authorized connection" are defined in chapter nine of the laws of 1842. By section first, it is made the duty of each company to draw the trains of the other over their road, "at reasonable times, and for a toll not exceeding the ordinary rate." And, in case of refusal, the second section provides that each "shall have the right to draw their said cars, with their own locomotives," over the road of the other.

This statute was in force when the charter of the A. & St. L. Railroad Company was granted. And, by section seven of the charter, the Legislature reserved the right "to authorize any other company to connect any other railroad with the railroad of said corporation, *but only on the easterly side thereof.*" And, in such case, they made it the duty of said corporation "to receive and transport all persons, goods, and property brought upon such other railroad, at the same rates prescribed by said corporation for like service upon their own road, at any of their deposits."

The Buckfield Branch Railroad was wholly *upon the easterly side* of the A. & St. L. Railroad, and was expressly authorized by the charter of the company to be connected therewith. This right has passed, by sale, to the petitioners. And, though they are authorized by their charter to extend their road to Portland, at any time before the year 1869, yet, if they do not avail themselves of this before that time, their charter will *then* attach to, and be limited by, whatever portion of the road is then completed. *Sec.* 13, *ch.* 122, *Special Laws of* 1857. If they extend it *across* the railroad of the respondents, it will then cease to be "on the easterly side thereof;" and the right of connection will be lost. But if it should not be extended, but remain, as now, a road entirely on the easterly side of the railroad of the respondents, the

right of connection will be preserved. We perceive no error in the ruling of the presiding Judge upon this point.

The statute of 1854 was not designed to confer any additional rights, nor to impose any new liabilities, upon railroad corporations. The object of it was to provide a more specific remedy for the violation of rights already granted. How far it may be found practicable it is unnecessary for us to inquire. Nor is it necessary in this case for us to enter upon any discussion in regard to the limits of legislative control over corporations. There are cases before us in which this question is raised; and we therefore reserve any extended consideration of it for the present.

The respondents, by their charter, are subjected to the liability of having other roads connected with theirs, " on the easterly side." The petitioners, by their charter and by purchase, have the right of connection. This right carries with it its necessary incidents. The rules by which these are to be determined are prescribed in the charters, and in the statute of 1842, re-enacted in the R. S., c. 51, § 26. The determination of the mutual rights and obligations of connecting roads is an exercise of judicial power. Under the statute of 1854, it may rightfully be done by this Court, by commissioners duly appointed for that purpose, on application to us, by any party aggrieved. Commissioners so appointed have no authority to impose any new duties or obligations upon the railroad companies. All they can do is to ascertain and determine, in any given case, what duties are already imposed by statute, and by the charters.

The ruling upon this point at *Nisi Prius* was, that the respondents were subject to the provisions of c. 93 of the laws of 1854; but were not liable to have terms imposed inconsistent with the provisions of their charter. This is in accordance with the principles above stated, and is not erroneous. The words of the statute may not have been chosen with a strict regard to the power of the Legislature, or of this Court, over corporations. Thus, the commissioners are required, upon a hearing of the parties, " to prescribe the

things to be done and performed." This might seem to imply that they could prescribe things to be done which the company are not required by their charter to do. That would be an exercise, not of *judicial*, but of *legislative* power. And even the Legislature could not do it without violating that provision of the charter exempting the company from "the imposition of any further duties, liabilities, or obligations." The Act of 1854 is to be construed in the light of this principle; and it should be so interpreted, if possible, as to be in harmony with the constitution.

A statute authorizing this Court, by Commissioners appointed therefor, to determine judicially what are the mutual rights and obligations of any two railroad companies, authorized by their charters to connect their roads, is certainly within the just limits of legislative power. Presuming that the statute of 1854 was not intended to go beyond this, we think it was remedial only, and was binding upon existing corporations. In the case at bar, it was proper that commissioners should be so appointed. There are some matters alleged in the petition upon which they have no legal authority to act; but it is not necessary, as the case is now presented on the exceptions, for us to express any opinion in regard to them at this time. We cannot presume that the commissioners will transcend the legitimate scope of their authority. Should either party, after the hearing, believe that they have done so, that question will be considered when their report shall be presented for acceptance.

*The exceptions are overruled.*

TENNEY, C. J., and CUTTING, MAY, and GOODENOW, J. J., concurred.